UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Counter-Defendant,        Case No. 1:14-cv-58

v.        HON. JANET T. NEFF

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Defendant/Cross-Defendant,

and

SPECIAL TREE REHABILITATION
SYSTEM,

        Defendant/Counter-Claimant/
        Cross-Claimant.
_____/

**OPINION**

Plaintiff Farm Bureau General Insurance Company of Michigan, a no-fault insurer, filed this case seeking coverage/payment from Defendant Blue Cross Blue Shield of Michigan (BCBSM), an ERISA[1] plan administrator, for services provided by Defendant Special Tree Rehabilitation System (STRS) to Timothy VanCamp, who suffered catastrophic brain and other injuries in a motor vehicle accident. VanCamp was both a participant/beneficiary of BCBSM's ERISA plan and covered by Farm Bureau's no-fault insurance. Pending before the Court is Defendant BCBSM's Motion to Dismiss (Dkt 57). Plaintiff Farm Bureau has filed a Response (Dkt 58), and BCBSM has filed Reply

---

[1] Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*

(Dkt 60).[2]  Having fully considered the parties' briefs and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion.  *See* W.D. Mich. LCivR 7.2(d).  For the reasons that follow, the Court grants the Motion.

### I. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]"  In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true.  *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).

To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

### II. Background

Plaintiff Farm Bureau filed this action seeking declaratory relief and damages against Defendant BCBSM (Count I); recoupment against BCBSM under federal common law (Count II);

---

[2]STRS takes no position as to the merits of BCBSM's Motion to Dismiss or Farm Bureau's Response (Dkt 59).

equitable subrogation against BCBSM (Count III); and declaratory claims against STRS (Count IV). Plaintiff's Amended Complaint (Dkt 28) sets forth the underlying factual allegations in pertinent part as follows:

> 9. On October 30, 2012, Timothy VanCamp was covered under a coordinated automobile no-fault policy of insurance issued by Farm Bureau for injuries and losses incurred from an accident arising out of the ownership, operation, maintenance and/or use of a motor vehicle as a motor vehicle ….
>
> 10. On October 30, 2012, Mr. VanCamp was involved in a motor vehicle accident, which triggered his rights to assert claims under the policy issued by Farm Bureau on a coordinated basis; however, his claims have and always will be subject to the provisions of the policy issued, as well as the Michigan case law and MCL 500.3109a.[3]
>
> 11. Upon information and belief, Mr. VanCamp was also covered under a primary policy for health insurance issued by Defendant Blue Cross Blue Shield of Michigan ….
>
> 12. Since October 30, 2012, Mr. VanCamp has submitted various claims to BCBSM seeking reimbursement for skilled nursing care, rehabilitation services, treatment, care, etc., from Special Tree Rehabilitation System as a result of the car accident in which he was involved on October 30, 2012.
>
> * * *
>
> 19. Mr. VanCamp, for a reduced premium, elected to purchase coordinated coverage from Farm Bureau under MCL 500.3109a in this matter and, thus, Farm Bureau is second behind BCBSM to reimburse any of Mr. VanCamp's medical bills.
>
> 20. Despite being in a higher order of priority, BCBSM has failed to reimburse any and all of the medical bills incurred by Mr. VanCamp as a result of the motor vehicle accident, and has issued denials pursuant to its policy for the claims incurred by Mr. VanCamp at Special Tree Rehabilitation System.

---

[3]Section 3109a provides: "An insurer providing personal protection insurance benefits under this chapter may offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. Any deductibles and exclusions offered under this section are subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household."

21. Mr. VanCamp has now submitted the claims to Farm Bureau and is seeking reimbursement from Farm Bureau for claims denied by BCBSM.

Farm Bureau seeks a declaratory judgment that (1) BCBSM is responsible to reimburse both VanCamp's past and future medical bills on a primary basis; and (2) because Farm Bureau is not first in priority to reimburse the medical bills incurred, Farm Bureau is entitled to recoupment from BCBSM for any payments already made or ordered to be paid to satisfy any past and/or future medical claims. In the alternative, Farm Bureau claims equitable subrogation under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enforce the terms of the BCBSM Plan on behalf of VanCamp and/or under § 502(a)(1), 29 U.S.C. § 1132(a)(1), to enforce his rights under the Plan and obtain reimbursement of any payments wrongfully paid to VanCamp for his injuries arising out of the motor vehicle accident. As to STRS, Farm Bureau alleges that BCBSM denied coverage for the claims incurred for various reasons, including the lack of medical necessity and/or eligibility based on VanCamp's medical condition, and thus Farm Bureau seeks a declaration from the Court whether the services provided are reasonable and necessary for the care, recovery or rehabilitation of VanCamp.

### III. Analysis

BCBSM advances several grounds for dismissal of this case, dependent on whether the case is characterized as a coordination-of-benefits priority dispute between insurers or a claim for benefits under an ERISA plan based on subrogation or recoupment. Defendant argues that this case is NOT a priority dispute because BCBSM does not dispute that its Plan is primary for *covered* services (Def. Br., Dkt 57 at Page ID# 488). Further, the services are not covered under the BCBSM Plan because VanCamp did not meet the Plan's medical necessity criteria, which was the basis of

BCBSM's denial of benefits. Any challenge to this denial falls under ERISA § 502(a)(1)(B), as an action by a participant or beneficiary pertaining to plan benefits, not an action for declaratory relief by a third party under federal common law or for equitable relief under ERISA § 502(a)(3). The only proper legal basis for Farm Bureau to assert a claim under § 502(a)(1)(B) is as a subrogee. However, Farm Bureau cannot assert any claim as a subrogee because it has not paid any of the STRS claims at issue. Thus, Farm Bureau lacks standing to proceed with any of the claims alleged against BCBSM. Further, even if Farm Bureau could proceed as a subrogee of VanCamp, the claims are properly dismissed because VanCamp's administrative remedies were not exhausted as required to proceed in this Court. Thus, all claims against BCBSM must be dismissed.

Farm Bureau argues that BCBSM has placed Farm Bureau in a "Catch-22," because these circumstances are inherent in the problem, which denies any solution. Farm Bureau argues that although BCBSM knew that VanCamp's health care coverage under the plan was coordinated with and has priority over Farm Bureau's no-fault policy, BCBCM provided Farm Bureau no notice of or documentation of its denial of benefits in order for Farm Bureau to seek review of the denial, *until after the time for seeking such administrative review expired* (Pl. Resp., Dkt 58 at Page ID# 773-74, emphasis in original). Thus, BCBSM's medical necessity determination is essentially unreviewable (*id*. at 774). Similarly, BCBSM's alternative argument that because Farm Bureau has not yet paid any STRS bills, Farm Bureau is not yet subrogated to VanCamp's position and lacks standing to challenge the benefits denial is yet another "Catch-22" that attempts to nullify the entire scheme of coordinated benefits "erected" by the Michigan Legislature (*id.* at 773-75). That is, BCBSM attempts to unilaterally shift to auto insurers like Farm Bureau the cost of providing any benefit that it chooses to classify as not "medically necessary" despite that the no-fault insurer has charged a

lesser premium based on coordinated medical benefits (*id.* at 775).  Farm Bureau argues that under these circumstances, it has standing as a matter of federal common law to bring a judicial challenge of BCBSM's determination that STRS's services are not "medically necessary" (*id.* at 776).

Farm Bureau asserts that this "action is neither a subrogation action nor a claim for benefits under ERISA" (*id.* at 777).  Rather, Farm Bureau "asserts a federal common law claim [] to establish the priority of coverage for the cost of medical treatments that, absent such a determination, will be paid out of priority owing to BCBS's refusal to acknowledge and perform in accordance with the priority of obligation imposed upon it by law" (*id.*).  Thus, Farm Bureau contends that "[a]t bottom, this case is a *priority dispute*," in which "Farm Bureau seeks declaratory relief and recoupment" (*id.* at 783).

A.

The problem with Farm Bureau's position is that there is no "priority" dispute in this case. BCBSM *concedes* that its plan is first in priority for payment of services to VanCamp.  Thus, because this Court is not called upon to resolve a "priority dispute" between insurers, the federal common law for resolving such disputes is inapplicable, and Farm Bureau's reliance on such cases as governing authority is misplaced.  *See* Pl. Resp. at Page ID# 784, citing *Citizens Ins. Co. of America v MidMichigan Health Connectcare Network Plan*, 449 F.3d 688, 690 (6th Cir. 2006) (ERISA plan that did not expressly disavow coverage for medical benefits otherwise payable under no-fault policy was primary in coverage, *id*. at 697), and *Auto Owners Ins. Co. v Thorn Apple Valley, Inc.*, 31 F.3d 371 (6th Cir. 1994) ("[W]hen a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause must be given full effect." *Id.* at 374.).  No declaration by this Court as to priority is

6

necessary. BCBSM admits that it is first in priority as to payment for services covered under its plan.

B.

Second, contrary to Farm Bureau's contentions, the facts do not support a so-called "independent action" by Farm Bureau for reimbursement or recoupment. Farm Bureau's reliance on *Prudential Property and Casualty Insurance v Delfield Company Group Health Plan*, 187 F.3d 637 (Table), 1999 WL 617992 (6th Cir. Aug. 6, 1999), to pursue such an action is misplaced (*see* Dkt 58 at Page ID# 786). As Farm Bureau states, in that case, "Prudential, the no-fault insurer, was 'not stepping into the shoes of [the plan participant] in the classic sense of an assignee or subrogee. Rather, Prudential, having paid benefits to the participant/beneficiary, is asserting *its own rights under federal common* law in seeking a declaration of liability ….'"[4] *Delfield, supra* at *3 (emphasis in Pl's. Resp.; *see* Dkt 58 at Page ID# 786). As Farm Bureau further states, "[t]he court specifically rejected the health plan's argument that a claim for benefits wrongfully paid by the no-fault insurer out of priority was a subrogation claim" (Dkt 58 at Page ID# 786). *See Delfield, supra* at *3. However, here, Farm Bureau has not paid for any such services "out of priority" as in *Delfield*. In fact, it apparently has paid for *no* STRS services at issue, so it has nothing to "recoup" from a legal standpoint. Farm Bureau has shown no legal or factual basis for an independent action for reimbursement or recoupment.

Farm Bureau nonetheless argues that it is entitled to proceed based on hypothetical reasoning. That is, if VanCamp is entitled to benefits under the No-Fault Act (i.e., if his medical

---

[4]Farm Bureau omits the remainder of the sentence, which states that Prudential was seeking a declaration of liability "under the respective COB [coordination of benefits] clauses."

treatment was "reasonably necessary"), then it was, by hypothesis "medically necessary" under the BCBSM Plan, and Farm Bureau would have wrongfully paid out of priority, and would be entitled to recoupment.  Therefore Farm Bureau has standing to request that this Court issue a declaratory ruling that BCBSM is responsible for any benefits payable for any STRS services to VanCamp (Dkt 58 at Page ID# 787).  Farm Bureau provides no legal authority to support relief based on such hypotheticals, and the Court declines to entertain relief on such precarious grounds given the express statutory schemes for relief under ERISA and the limited exceptions under federal common law. These hypothetical issues are not ripe for decision because Farm Bureau has made no payment for the services at issue.  Additionally, Farm Bureau provides only cursory argument and no authority for its proposition that treatment that is "reasonably necessary" under Michigan no-fault law equates to treatment that is "medically necessary" under the BCBSM Plan.  In any event, whether treatment is "medically necessary" is essentially a substantive benefits issue, most appropriately resolved under ERISA procedural law and the Plan terms (*see, e.g.*, BCBSM Ex. 6, *Farmers Ins. Grp. v. Plumbers Local 98 Ins. Fund*, No. 08-10597, 2009 WL 3152790 (E.D. Mich. Sept. 29, 2009), and Ex. 7, *King v. Detroit Med. Ctr.*, No. 01-72992, 2003 WL 23354130 (Order) (E.D. Mich. Sept. 24, 2003).

## C.

Despite Farm Bureau's novel arguments in avoidance of the requirements under ERISA, this case is at its core a challenge to BCBSM's denial of benefits under an ERISA welfare benefit plan as opposed to a priority dispute.  The key question is whether BCBSM properly denied benefits under the plan, i.e., coverage for STRS services.  "Section 502(a)(1) of ERISA permits participants or beneficiaries of employer health care plans to bring civil suits to recover benefits.  *See* 29 U.S.C.

§ 1132(a)(1)(B). However, it is well established that a participant or beneficiary must exhaust his or her administrative remedies prior to commencing suit in federal court." *Delfield*, 1999 WL 617992, at *2 (footnote omitted). The Sixth Circuit has extended ERISA's administrative exhaustion requirement to assignees of participants or beneficiaries. *Id.* (citing on *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 91 (6th Cir. 1997) (exhaustion applied to plaintiff podiatrist-assignee who stepped into the shoes of the participants and attempted to assert their rights for the recovery of benefits under § 502(a)(1)(B)). Here, it would appear that had Farm Bureau paid for the STRS benefits denied by BCBSM, Farm Bureau could pursue recovery under § 502(a)(1)(B) based on subrogation. See *Plumbers Local 98 Ins. Fund*, 2009 WL 3152790, at *3. Nonetheless, in such circumstances, Farm Bureau would be subject to the administration exhaustion remedies. *See Delfield*, 1999 WL 617992, at *2-3 and *Weiner*, 108 F.3d at 91.

Farm Bureau does not dispute that VanCamp pursued only an initial appeal of BCBSM's denial of benefits for STRS services, and did not pursue further review to properly exhaust his administrative remedies (*see* Dkt 58 at Page ID# 781). Accordingly, even if Farm Bureau had standing as a subrogee of VanCamp, any instant claim by Farm Bureau to recover benefits under § 502(a)(1)(B) is subject to dismissal based on the lack of administrative exhaustion.

Farm Bureau argues that exhaustion does not apply because under § 502(a)(3) of ERISA, Farm Bureau has standing to bring "a claim for equitable subrogation that would enforce the plan's terms" (Dkt 58 at Page ID# 789). Section 502(a)(3) provides that a civil enforcement action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or

the terms of the plan." 29 U.S.C. § 1132(a)(3). However, for the reasons discussed above, Farm Bureau has not established that it qualifies as a "participant, beneficiary, or fiduciary," having failed to render payment for any of the services for which it seeks reimbursement. Farm Bureau's argument that it has standing because the Court may order Farm Bureau to pay for benefits, places the proverbial "cart before the horse." Absent standing, Farm Bureau is not entitled to an adjudication of the benefits claim at issue.

Finally, Farm Bureau acknowledges that if it pays, or is required to pay benefits owed by BCBSM, Farm Bureau will be, to that extent, equitably subrogated (Dkt 58 at Page ID# 790-91). Farm Bureau asserts that "[i]f the Court follows this alternative procedural course, some statutory language and case law suggests that exhaustion of the administrative appeal process *might be required in some instances*" (*id*. at 791, emphasis in original). But Farm Bureau argues that it should be excused from the exhaustion requirement because it would be futile. *See Fallick v Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) ("Although ERISA's administrative exhaustion requirement for claims brought under § 502 is applied as a matter of judicial discretion, a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate.").

Farm Bureau contends that exhaustion would be futile because (1) BCBSM has maintained that Farm Bureau has no standing to invoke the appeal process and thus would not allow Farm Bureau to appeal its denial decision; (2) the appeal fact sheet echoes this position, confining the right to appeal to the plan participant; (3) BCBSM withheld all notice of appeal rights from Farm Bureau until after the time for appeal expired and only turned over the appeal documents when ordered to do so by this Court; and (4) the four months within which a plan participant may request an external

10

review expired in June 2014, which Farm Bureau learned too late, after this Court's May 19, 2014 order (Dkt 58 at Page ID# 791-92). Farm Bureau argues that the Court should not permit BCBSM to hide behind its administrative appeals process at this late date. Farm Bureau further asserts that, given that the BCBSM's benefits determination is reviewable only under the "arbitrary and capricious standard," it is clear that BCBSM is not going to alter its coverage denial.

These arguments do not demonstrate that exhaustion would be futile. "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Fallick,* 162 F.3d at 419. "A plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Id.* (citation omitted). Farm Bureau's arguments concerning notice, untimeliness and BCBSM's alleged obstacles to exhaustion do not show futility, particularly where nothing establishes that Farm Bureau was entitled to notice of the BCBSM benefits denial. Farm Bureau's sole argument that addresses the outcome of further administrative appeal merely presupposes that the benefits denial would not change based on the applicable legal standard, regardless of any plan terms or the record. This Court declines to find futility based merely on suppositions. Accordingly, Farm Bureau's claims are subject to dismissal for failing to exhaust the administrative remedies.

### IV. Conclusion

Farm Bureau has shown no legal or factual basis for an independent action for reimbursement or recoupment. Farm Bureau is correct that in *Delfield*, 1999 WL 617992, as in *Thorn Apple Valley, Inc.*, 31 F.3d 371, the Sixth Circuit held that the application of federal common law was appropriate "'[b]ecause no federal statute addresses the resolution of the conflict between

the COB clauses,'" and in those circumstances ERISA's administrative exhaustion was inapplicable. *Delfield*, 1999 WL 617992, at *3 (quoting *Thorn Apple Valley*, 31 F.3d at 374 & citing *Auto-Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 818 F. Supp. 1078, 1083 (W.D. Mich. 1993), *rev'd on other grounds*, 31 F.3d 371). However, the circumstances in those cases are inapposite because the resolution hinged on a direct priority dispute, which does not exist here. Instead, the facts and circumstances indicate that this case is more appropriately presented and resolved as a coverage dispute. *See, e.g., Hope Network Rehab. Servs. v. Blue Cross Blue Shield of Mich.*, No. 5:05-cv-163, 2006 WL 3759814 (W.D. Mich. Dec. 19, 2006) (involving a similar dispute between a no-fault insurer and an ERISA health care plan administrator (BCBSM) over coverage and payment for rehabilitation services provided to a claimant injured in a motor vehicle accident).

In sum, this case does not fit any of the recognized bases for independent actions to recover ERISA benefits by a non-participant/non-beneficiary on which Farm Bureau relies. While the Sixth Circuit may find it appropriate to extend such actions to permit recovery in the circumstances presented, it has not yet done so.

Because STRS takes no position on BCBSM's Motion, the Court renders no decision as to STRS. An Order will be entered consistent with this Opinion.

Dated: August  13, 2015         /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge